Thank you, Your Honors. This is the appeal that focuses on the inexplicable event where you have two fundamental flaws. The first one's the stay, since we're talking about the stay procedure. 6004H, unequivocally, with no precedent that they've decided on the appellee's side, does not allow the shortening of a 14-day window. For the very reason that the courts inquired as to the activity of a stay, 6004H mandates that you have 14 days in which to seek the emergency stay, which we did and which the district court granted. So Judge Selma grants our emergency stay relief, but literally, simultaneously, within the 14 days. Was there diligence? When did you attempt to seek that stay? Immediately. I mean, you have the practicalities that under 14 days you have all of the marshaling of an evidence. You've got a multiple thousand page record. But within the 14 days, within 8 days as I recall, we were there. Because the 10th day, or maybe it was 12 days, because the 12th day was a fright. So it would have been 11 days we filed it. It went to the BAP. Then they circumvented that, which they have a right to do, and sent it to the district court. So we lost that day or two days while they rewrited the file. So we were there by day 10 or 11 at the latest. Now the settlement was set to be approved on Sunday. That was the normal statutory time frame. They moved it to Friday. So literally, while Judge Selma, the district court, has now issued an order, goes through the internet that he's issued a stay, they move up through a private arrangement, modify the agreement, and the money changes hands, and they come in with a declaration that says, well, we've closed this auction. Now that can't be allowed. There's no possible precedent to shorten that 6004H session because that specific code is to allow. And this was a complicated issue. The first appeal is because of the record of the settlement that positions the 50-50 owner in an inside position. The reason an auction cannot occur with an insider without great scrutiny is because by definition you're prohibiting the body of bidders. There is a $25 million value placed by the only evidence in this record by Steve Lieberman, who had spent two years, according to his declaration. You can read the entirety of his declaration at ER 523. He goes through 40 paragraphs of having set forth in 30 years of experience how this was a sham. I have a tough time understanding all this. I mean, if you have a remedy, you're not trying to set aside the settlement. If you have a remedy, isn't it that the trustee entered into an inadequate settlement, and so that therefore your remedy is against the trustee? I mean, isn't that what you're really looking at? What you want is a ruling from this court that would help you in that claim by saying that the trustee had no right to ask the bankruptcy court to authorize the settlement. Appeal 1 deals with the settlement. Yes, I think the court should find that it didn't have jurisdiction, but I'm now on to appeal 2. There was no settlement. This was a 363B option, and they are a bit confusing. But again, the settlement occurs. It places Elysium now as the position party to come in and bid by itself. But still, whatever, isn't what you're trying to do is to say this whole transaction was unauthorized. The trustee breached its duty to the estate by entering into an inadequate settlement, and finally what your remedy would be, if any, would be against the trustee. Well, I think we're two steps removed, Your Honor. I do think that the district court, I think you remand this. Now, I mean, you have the de novo review ability to obviously just reach the ultimate issue. If the option under 363M was involving a non-good faith bidder, therefore, in this case there's replete evidence it was bad faith. You could just make that claim. The bankruptcy judge found that there was a good faith. The bankruptcy judge did not find that there was good faith based on the evidence. The bankruptcy judge rubber-stamped an order that had it in it. Well, I mean, that's a pretty serious charge to make against the bankruptcy judge. It is based on this record. I read the transcript of the hearing and his order, his findings. He found it was in good faith. The bankruptcy judge was presented the issue of whether or not there could be an emergency stay. That was the first issue that was boiler-plated to the court. And he denied it. He just simply approved an order that had a shortening. Well, but I thought at the hearing you asked him for a stay. I did. And he said no. He said no. And so automatically. So it seems to me, as Judge Nguyen said, that puts you on clear notice that you had better get to either the BAP or to the district court. We did. I mean, you can't change. When did you file your notice of appeal? Immediately. The next day? I don't know. Within 24 to 48 hours we were preparing the briefs, and by day 10 we had Judge Selma granting it and then reversing himself. So the question of how quickly can a human being take this volume of a record and present it to the BAP that then goes to the district judge is the very essence of 6004. Look, the legislature has long picked 14 days. They could have picked 21. They could have picked one. They passed a rule for this very purpose. 363 auctions, which this is a very textbook example, are very complicated. This was an entire group of facilities, oil and gas leases, and assets that were the gravamen of an oil company and bankruptcy subsidiary. Only with the 14-day window is it humanly possible to get in front of a district judge and have that judge have the reasonable opportunity. I mean, to Judge Selma's credit, with the absolute volume that we brought to him not on day 13, he granted the stay. Well, district judges have authority to do a lot of things. He could have granted just a temporary stay while he considered your motion to, you know, while he determined whether to grant a longer stay pending the bill. There's different things that he could have done. He could have. I think what he said, though, in the record was that there were funds in the estate and, therefore, other remedies existed. But then he found it was jurisdictionally moot, and that was the error. It wasn't jurisdictionally moot at all. We had perfected all rights of the issue of whether or not the auction was, in fact, a good-faith or bad-faith buyer in the auction. So is it your position that you had an extra two days to get the stay? Well, absolutely. You had at least to the 14th day for the court. The court rendered the – he reversed himself on the stay because they had filed a declaration that says, remove monies, change hands. Now, how disingenuous is it that if you have 14 days within which the opposing party who vehemently opposed the auction, vehemently opposed the setup to the auction, which was the settlement, brought in expert's testimony and you had a record of multiple creditors, not just this one, multiple creditors asking for more time, recognizing this is the whole dance of this estate, it's going to be spent on this auction, and then they shorten it two days. And had they not, Judge Selna had ruled. He was going to look at this, slow it down a little bit, and see whether or not the auction, in fact, was done by an insider. But then his ruling was, look, I found out now that they changed hands. The money's been wired. The $10 million's been wired. Well, wait a second. The $10 million's in the trustee's account. Getting to the merits for a moment, you're on appeal now. So you have the very difficult burden of demonstrating that the lower court's finding that Elysium was, in fact, a good faith purchaser, that that finding was clearly erroneous, because that's a factual finding that we've got to review with deference. So what's your best evidence? The declaration. I mean, this is a 40-paragraph. Lieberman's declaration is the best evidence demonstrating clear error in your view? Absolutely, because that declaration sets forth from an expert in the business at the time of the auction. You'll never see a case where you have a single bidder and the only evidence in the record is a leading industry broker who's also a petroleum engineer who also evaluated this plant from its beginning that says this was a sham. They had three conditions, Your Honor. One was you had to put up $1 million up front. Two, you had to pay $7,500 just to look at the due diligence room. And three, they had a confidentiality agreement that no person signed until it was completely revised. He said he laughed when he met with his buyers from China about how this was one-sided. You don't treat a broker in the industry when you're a trustee and you're selling an auction with this sort of impunity, with some sort of a hatred or hostility. But yet he declares that he was basically barred from getting into the diligence room until six days. If you look at his final signature on page 532, he says who knows what I'll get in the next six days because there's 14,000 pages that are supposed to be uploaded. And they did that. Six days before this, they data-dumped on all the creditors to look at every aspect. Can you imagine the amount of time it would take to buy an oil and gas facility? This was a 25-year working facility. It's an oil and gas operation. It's being sold to the oil industry. There was no urgency here. The $10 million could have easily stayed in the trustee's account while Judge Selma looked at this issue and determined whether or not there was clear error. If, in fact, this was a collusion and a sham. If you look at these 40 paragraphs and say this is outrageous. Nobody sets up an auction where they bar the public from bidding. And that's effectively what they did. And, of course, the proof's in the pudding. Now, I'm still confused about the remedy. You say that what this court should do is to remand to the bankruptcy judge on a finding of good faith when the bankruptcy court has already found good faith? No, you have two specific alternative remedies. This is here because Judge Selma found after granting the stay that it was equitably moot. That's a de novo review. You reverse that. Say it wasn't equitably moot. The four-part test has multiple variables here. Because there are remedies, there are remedies then, there are remedies now. This estate is open. There's been no plan of reorganization finalized or approved. Notwithstanding the speculation, there's nothing that would prohibit Judge Selma from reversing. If you reverse the equitably mootness, then he reaches the merits. And finds that the 363M standard was violated and that there was clear error in finding that there was a good faith buyer. Then there are remedies that are available because the estate's open. The buyer who bought this was already a 50-50 owner. This is not a third party. This isn't somebody coming in and buying this asset. This is a half owner who owns 50% of the working interest in the oil and gas leases who essentially did an accounting transfer on the balance sheet. They went from 50 to 100. They go back to 50. The idea that you would have a 959 suit against the trustee. What would happen to the money that was paid? The money that was paid by the trustee that left the estate? I guess he'd better answer to the bankruptcy court. He knew the 9th Circuit was going to be reviewing this and he knew the district court was going to be reviewing this. So that is where if the bankruptcy court after remand and it's found that this was not a good faith purchaser and therefore there was collusion, you cannot as a trustee disperse those funds. He should have frozen them. There's just one clarification. So under Rule 6004H, that imposes a 14-day stay that the bankruptcy court can waive. That's what happened here, correct? It is error for a bankruptcy court. But isn't that what happened here? That's what happened here. That's what happened here. And you asked at the hearing for the bankruptcy judge to stay at pending appeal and he said no. He granted the exception to this rule. And so you knew you had to be in front of the BAP or in front of the district court like the next day. I understand that these are complicated matters and whatnot, but we get matters here all the time. And I'm sure in the 4th Circuit too they get the same stuff. I mean immediately parties go to the circuit or to the court. It doesn't beg the question. It does. The question that's begged is what is your authority to a bankruptcy judge that waived 6004H without a basis? And the answer is reverse him. You cannot waive 6004H because somebody puts it in an order. The point is that the bankruptcy judge made that discretionary call. And if you didn't agree with it, you could have rushed to court the very next day. I think it would be absolutely true if Judge Selna had not granted the stay. In other words, if it were true that we didn't get to him quick enough, and you were looking at this and balancing the interest of whether or not error occurred by the bankruptcy judge in waiving 6004H, which he had discretion to do, although no precedent, because the precedent says you have to have factual reasons. But we have a stay, and then the stay is lifted within the next 4 hours. That's the unique fact here which proves we got to them quick enough. He did look at it. He read it, and he granted the stay. How could you then go from reversing that stay merely because they crammed a settlement through and exchanged money and rushed the 2 days that he had? I think that's our best case, is there was a stay. We got one. We were fast enough. Time's up. Thank you. May it please the Court. Catherine Castaldi, appearing on behalf of the appellee. James J. Joseph, the Chapter 11 trustee for the bankruptcy estate of South Coast Royal Corporation. Your Honors, I was going to start with 6004H, but the Court has addressed the fact that as a practical matter, 6004H specifically provides for a waiver by the bankruptcy court if it so orders. It's right within the rule, the procedural rule. And in fact, the request that 6004H be waived was part of the sale motion that was filed with the bankruptcy court and was in fact granted without objection from Mr. Mahaffey until such time as he made the request after the Court ruled that a stay be issued. So with respect to that issue, I appreciate the Court's clarification on that. With respect to the diligence with which Mr. Mahaffey pursued, and I will excuse me for calling out Mr. Mahaffey, which appellants pursued the stay, they did not file their notice of appeal not on February 18th, not on February 19th or February 20th. They filed it on February 27th. So it wasn't filed within a few days of when the case, of when the order was rendered on February 17th. But Judge Selna did grant it. What Judge Selna did, Your Honor, was grant a stay, a temporary stay, for the purpose of allowing the opposing parties, appellees James Joseph and also Elysium and E&B, to come before the Court with their opposition as to why such a stay should not issue. That is the limited relief that Judge Selna granted to the appellants. Unfortunately, it was granted after the sale had concluded. 363M provides... So the order by Judge Selna was entered after the sale had been completed? The sale had concluded. That's correct, Your Honor. So it wasn't on Friday that he issued it and you all hurried it up and settled on Sunday. The wire, my understanding is the wire had left on Thursday, transferring funds from Elysium's account into the account of the estate, the trustee's account. We had set Friday morning as the deadline, as the date in which we were going to be closing the sale. We held a closing at the offices of Angus and later found out that Judge Selna had issued a stay. Judge Selna, in his order ultimately dismissing the case, acknowledges that the sale had closed at the time that the stay was issued. It had already closed. It had already closed. And under 363M, where the Congress has, as a matter of public policy, has a safe harbor for bankruptcy sales, just to prevent the kind of nonsense that's gone on in this particular instance. The issue is where a move-in and the purchaser come before the court, request a determination of a good faith finding pursuant to 363M, provide the court with evidence as to the basis for that good faith finding, and, in fact, the court relies on that evidence in issuing such finding, and in this case also assessed the declaration of Mr. Lieberman, and the court makes reference to that in his tentative ruling and also in the findings and conclusions that were issued in support of the sale order. The court found that Mr. Lieberman's declaration was not credible. On the other side, he did find credible the declarations of James Joseph and the declaration of Steve Layton, the buyer's representative, and he concluded and found within his sale order there was an explicit finding that the sale was negotiated and proposed in good faith and therefore entitled to the protections of 363M. There was a finding that the SBA was the product of extensive, substantial discussions and negotiations between the parties that occurred over the span of several months. The negotiations and conduct of the parties were at all times in good faith. That was found by Judge Albert. The trustee was free to deal with third parties throughout the negotiations and sale process. At no time did Elysium, Angus, or the trustee collude with one another to disenfranchise other prospective bidders, engage in any process to allow Elysium to secure the Angus stock for less than market value, or ensure that the trustee received anything other than the maximum value for the benefit of the estate. The bankruptcy judge wrote all of that? Yes, he did. Did he? He did. It's not just signing an order? No. These were specific findings that we asked for and that the court ruled on. And I think it's important to note as well that many of the issues that the appellants are complaining of today in terms of the way that the sale was conducted should not be before the court right now, and this is why. In September of 2011, the trustee bifurcated the way that this motion was done. So he moved the court for a bidding procedures order. It set forth all of the things that Mr. Mahaffey was just complaining about to this court. It set forth when the timing of the sale would be, what the advertising would be. It approved the $7,500 request for due diligence fee, given the circumstances and the enormous effort that was undertaken in order to get those documents together and ready for parties to do their due diligence. All of those things were approved by the court, and while there were objections, there was no appeal of that order. And that was the order of the court under which we proceeded in the sale. And the trustee complied with all of the provisions of that bidding procedures order when he conducted the sale. The other thing that is of import here is that there were no parties, and this was also found by the bankruptcy court, that complied with the bidding procedures order. There was not one qualified bidder. Now, Mr. Lieberman, who submitted his declaration two days in advance of the sale order hearing, suggests that the reason for that is because nobody would purchase the asset, meaning the stock of Angus, when the stock of Angus really only entitled the purchaser to 50% of the Springfield unit facility. What Mr. Mahaffey has neglected to advise the court is that Angus always only had 50% of the Springfield unit facility. It was the operating interest holder of the Springfield unit facility, which was owned 50% by it and 50% by XTO at one time, and then subsequently through purchase by Elysium. So that fact was not altered by virtue of the settlement. That had always been the case. So always, that's all the court had to sell, or rather, that's all that the trustee had to sell was its 50% interest, its stock, which represented a 50% interest in the Springfield unit. Finally, I would make one final comment, and then I will cede the balance of my time to Mr. Katzman, unless the court has questions. The issue as to why the trustee wanted to move forward with a sale closing was also put before the bankruptcy court, both in the bidding procedures motion and also in the sale motion, and the reason was this. The Angus facility was under a cease and desist operations order, a shutdown of its water injection permit by the Department of Oil, Gas, and Geothermal Resources for the state of California. That matter was on appeal, and there had been an administrative law hearing scheduled to occur on March 28 of 2012, so less than 27 days after the sale was purported to close. I believe that when, and Mr. Katzman can address this, but when Elysium requested a March 4 closing date originally, the reason for that was because they wanted time to go forward before DOGGR with their arguments as to why, and their representatives present, as to why that order should be lifted. On the other hand, were we not able to close the sale with Elysium, which, by the way, closed for a $10 million purchase price, we would have ended up in a situation where, had DOGGR ruled against us, then we would not have had much to sell. So, Your Honor, with that, I will cede the balance of my time to Mr. Katzman, unless the Court has any questions. Just a few follow-ups. We parted with $10 million in good faith. We did that with findings of good faith. We relied on that in a commercial, reasonable manner.  And, by the way, Mr. Appellant's counsel misrepresents the record as it relates to that 1003 order. It's in our company sanctions motion that we've submitted in this matter. And, by the way, we did do a sanctions motion in this matter. We did not do that lightly. I've never done that before before a court of appeals. But when you look at the misstatements and misrepresentations that are contained in the record by appellants, they are significant, they are, I would dare say, systematic. And, for example, one of the parties that's appealing here didn't even show up and file a notice of appeal at the district court. Didn't participate in the district court, filed a notice of appeal in the Ninth Circuit. This joint venture wasn't at the lower court on the sale order. The sanctions motion has numerous citations to misrepresentations. And, frankly, this hearing could point out that there were misrepresentations. 6004, as Judge Paez pointed out, does have unless otherwise ordered. It's not an absolute. And it was otherwise ordered. They did not immediately appeal, as Mr. Appellant's counsel stated. They sat on their rights. We parted with $10 million. I'm just curious. What happened with the cease and desist order? The cease and desist order, I will tell you that eventually I think that there has been, after extensive discussions with DOGGR, there has been, and I believe it's ‑‑ I wasn't representing my client on that. That's okay. I thought they settled it. Eventually there has been a resolution. But it required lots of negotiation. I think I read that in one of the briefs. I recall that there had been some resolution. But the fact of the matter is it was an actively litigated issue that if Elyseum had lost it, or it had been lost, the value of the stock would have been severely diminished. Not only that, to comply with that order, and I'm going from secondhand knowledge, I believe there were certain actions that had to be taken. South Coast was in bankruptcy. Angus didn't have the funding to deal with these issues. It was in a very dangerous position. It wasn't my call. It was the trustee's call on respect to that issue. The trustee and these parties were fully aware of that for many, many years that DOGGR had, that there had been this pending litigation. But we did part with $10 million. And a significant portion of that money went to Appellant's clients and to Appellant. And my client is not – there is no remedy here that this court can entail. And that is why 363M is there. And that's why the case law, which is so well settled, supports the proposition of the finality. And the cites and the legal arguments that are being made as to the Thorpe factors, they're just not applicable. There's case law directly. So the whole point here is that if we determine that the sale was in good faith, then under 363M the case is over. Yes. I think that this is – the mootness – we've argued that alternatively. We've said that the matter is moot, but alternatively that if you look at the merits, the bankruptcy court had a complete record before it and made a very, very detailed analysis as to both whether this was in the best interest of the estate and in good faith. And something else that I think the court should know is this wasn't a rubber stamp. We submitted an order, actually, that had – fearing that we would be here on issues such as this because that's the nature of – the litigious nature of this matter. We asked for some very extensive findings. And if you read the transcript, Judge Albert pushed back on that and narrowed the scope of the findings to the set that finally was entered in the order. This was not a rubber stamp. This was a critical analysis. And by the way, at the hearing, if you look at the transcript, there isn't one other bidder that came forward. And that's what Judge Albert said, show me the money. Nobody else was willing to show the money. And there's a good reason. The Chinese didn't have time. The Chinese had plenty of time. I think that what – if there was a chilling factor here, it was the litigious nature at the lower court of the appellate. Nobody wanted to touch this. Well, it would say nothing about dependency of the cease and desist order litigation. The court – and I would leave the trustee to argue that more. But I believe that the court did consider that in its analysis. So there was exigent circumstances. There was significant sums. And even Mr. Lieberman's analysis, which talks about a illusory $25 million value, that's for the whole thing. We owned half of it. And it was found in the OSC, in the discharge OSC, that we did nothing wrong in acquiring our half interest. They only had a half interest. He may not – the appellants may not like that, but that's the reality. And $10 million for that half interest, as the court found, was by and far the best offer. Just – your time is up. But could I just clarify one thing for our sheet here? Ms. Castaldi represents Joseph, the trustee. Is that right? Yes. And you represent? I represent the purchaser, Elysium. Elysium. Okay. I just want to clarify on our sheet. I know I'm out of time, but one other point. Yesterday the bankruptcy court entered an order approving the settlement with Mr. Grayson. That was related. We got notice of that settlement. You have notice of the settlement, which was contested as being speculative. Yes. The order has been entered. Pursuant to the terms of this, once the order becomes final, the appellate period is run, there will be a statement being filed establishing that Mr. Grayson does not support – essentially doesn't support this appeal. Great. Okay. Thank you. Did he have any time? 18 seconds. 18 seconds. That's all you got. 15 seconds. So I guess the main point is that the $10 million was paid for a $25 million asset. That's the Steve Lieberman Declaration by an insider who's acquired – Why isn't it for a $12.5 million asset? I'm sorry. Because the 50% interest was the entire basis of the first appeal that they obtained through the illegal settlement, and that was still available to contest except for them as the buyer. Any other party could have come in, paid full value, and set aside that interest. It was simply a title cloud. They didn't actually own 50%. That was the whole pretense. To own 50%, they had to have conveyance of valid leases. There were no valid leases. That was the entire premise of the first appeal. That's why it's so significant. With no lease validity, they'd all terminated years earlier. You own 50% of nothing. Angus had new leases. They were worth $25 million. This inside player came in, paid $0.50 on the dollar, and made out with the money that owes to these creditors. That was the value of the estate that's gone now. Okay. Thank you, counsel. We appreciate all the argument that we've heard on these two matters. It's very interesting, and they'll both be submitted at this time.
judges: Motz, Paez, Nguyen